Good morning, Your Honor. My name is Richard Hamlisch. I represent the appellate plaintiff in this case, Joseph Pierre Rollin. I'd like to reserve three minutes of my time for rebuttal. This case revolves around really four issues. First issue, and not in their importance, but the first issue is the tolling statutes. The second is qualified immunity. The third issue is the – whether the Hendersons are – should be in this case under – as 1983 defendants, put it that way. And attorney sees in terms of the service of the complaint by the group for – Let me ask you a question about the qualified immunity issue. Let's say we agree with you that the investigator violated the defendant's Miranda rights, of which she certainly should have known, when she talked to him before Mirandizing him and that her talk with him, although not phrased with question marks at the end of sentences, amounted as a practical matter to statements designed to elicit admission. Let's say we agree with you on all that. No qualified immunity, plain constitutional violation. What prejudice is there from that? The prejudice is that those statements were used in the preliminary hearing. They were used, but what prejudice is there from that? It looks to me as though it was a pretty close case. Two different juries went two different ways. The first jury may have gone against the defendant. Because of the un-Mirandized statements coming in, it also may have gone against the defendant just because two juries may see the same evidence differently in this close case. Well, the – firstly, the two juries didn't see the same evidence. The two juries saw different evidence or heard different evidence. The difference is they didn't hear the un-Mirandized statements at the second trial. Secondly – Well, we don't know if that's what made the difference to them. Well, I wasn't there, but from what I'm told by counsel who was there, the jury was out for a long time in the first case and a very, very short time in the second case. Somebody told me 20 minutes. I don't believe that, but somebody told me they were out for 20 minutes. But that may or may not be true. But from everything I can glean from the transcripts. The thing is that can happen just because of voir dire and who you draw. When I read the facts on this case, it looked to me like, boy, it's hard to say. Well, I guess it's hard to say if you hear the un-Mirandized statements. But if you hear – I couldn't see that they made that much of a difference. It was so hard to say. Well, I'm not sure how to explain it, but if you – and we don't have it here, unfortunately, because Mr. Rawlins didn't have the funds to pay for his transcript for the second trial. And the only reason we have a transcript from the first trial is because it went on appeal and it's an automatic. In California, they're automatic. But – But you may be able to help in this sense. What is it in the un-Mirandized statements that were used in the first trial that were inculpatory that would lead us to believe or suspect or potentially conclude that they were harmful to him in the first trial? What statements were there in that un-Mirandized statement? For all intents and purposes, the statements in the un-Mirandized portion that Mr. Rawlins made were very much to protect his brother, who he thought they were going to prosecute. And he was protecting him and saying things that he wasn't there and she was there and various places. And they were going – they weren't moving and they were moving. And there were a lot of contradictions. I thought it was the opposite. Maybe I remember it wrong. I thought in the un-Mirandized statement he said, I wasn't even there. My brother was taken care of. That's exactly right. And it's not to protect his brother. That's to leave the responsibility on his brother. Well, the allegations in the criminal case against him were that he abused her, elder abuse, and he didn't take care of her. And one of the things is he left her and left her with somebody who had no training whatsoever. Let me go at it this way. The California court of appeal reverses the first conviction. Yes. Based on the introduction of the un-Mirandized statement. That's correct. From which I think I have to infer that the California court of appeal thought that the influence of the un-Mirandized statement was sufficient to justify a reversal. I agree with the Court. In other words, the California court of appeal thought that it made a big difference such that he got a new trial. Absolutely. That does it to me for prejudice. Yeah. But my question, I'm afraid, I'm going to go back and work on something that Judge Kleinfeld's question merely assumed, and that's qualified immunity. I mean, what is it that says at the time that this confession is taken that an officer can't do questioning without Mirandizing, then Mirandizing, questioning again, and then seeking to introduce at trial the statements made after the Miranda, even though they might be more or less the same statements that were made before Mirandizing? What's wrong with that? Nothing wrong with that. Well, then why shouldn't we look at what Cook did the first time around? I mean, this is un-Mirandized questioning. She realizes that that can't come in, but she's permitted to do that so long as she then Mirandizes and asks again and uses the post-Miranda statements against him. So why is the initial questioning a violation of the Constitution? I understand that it shouldn't have been used. That's a different question. That's what the prosecutor tried to do. But you're suing Cook. Well, I think you answered your own question a few minutes ago. Okay. In the question concerning prejudice. Absent. No, I'm not questioning about prejudice. I'm assuming that it violated the Constitution. I'm assuming prejudice, but I'm interested in qualified immunity. That is to say, how do we know that she violated a clear standard of constitutional law in allowing him to run his mouth for 20 minutes after she comes in and says, I want to find out what happened to Joy? I mean, that's the argument. I mean, that's what you're after. Yes. She came in and she took this statement, un-Mirandized statement. When she realized what she had here, she then left the room, went and got coffee, whatever they did, came back, took him into another room and Mirandized him. Actually, she came back in the same room and Mirandized him. I think she then took him in another room for the subsequent questioning. But the post-Mirandizing statement was not the same as the pre-Mirandizing. And what the court of appeals decided is the pre-Mirandizing was prejudicial and it shouldn't be admissible, and it violated the Constitution's rights. In the second trial, the post-Mirandizing statement came in. The whole statement was not excluded. In the second trial, the post-Mirandizing portion of that interview was included in the trial. So that the difference, if you separate the two, Cook knew, or should have known, any reasonable police officer would know, that you Mirandized. But my question is this, you see, there's clearly an error, I mean, that's what the California Court of Appeals held, to admit the statements made pre-Miranda. But Cook had, I mean, she's a police officer. It was the prosecutor who decided to try to introduce that pre-Mirandized statement. And it was the prosecutor who then induced the error. It was then the state court that allowed it in that committed the error. All she did was conduct pre-Mirandizing questioning, which I don't see is necessarily a violation of his constitutional rights. Well, Ms. Cook wasn't a police officer. She's an investigator and worked for the district attorney's office. Right. And she was part of the trial. She was part of the entire process. If she was a separate police officer. Yeah, I shouldn't say a police officer. She's an investigator. Yes, there would be a primitive problem. But as I understand the law, and you can correct me on this point, an investigator, whether working for the prosecutor's office or working for the police department, is allowed to do un-Mirandized, pre-Mirandized questioning. If some stuff starts coming out that's pretty damning, then Mirandize, and then ask the questions again. Is that wrong? I, unless I'm misunderstanding what the court is saying, an officer with an investigator, whatever type of law enforcement, can question somebody who was under arrest, in custody, without Mirandizing them, immediately, I think is in error. I don't.  Pardon? Absolutely. So it's okay for a policeman to say to a guy who comes across at the scene of some crime, hey, were you here? Did you see what happened here? And if the guy says, well, yeah, I shot that fellow on a sidewalk, no constitutional violation at all. But if suspicion is already focused on somebody, then you can no longer, then the policeman can no longer question him without Miranda and then Mirandizing and do it again. Absolutely. The Mr. Rollin had been in custody for two days. Let me ask you about something else, your statute of limitations problems. What survives the statutes, the applicable statute of limitations, and gets adequate tolling, and what, if anything, doesn't? I'm not sure I understand the question, Your Honor. We've got a basic two-year statute of limitations for personal injuries. Yes. And the suit is brought more than two years after the various violations of plaintiff's rights. There are actually three statute of limitations issues in this case, or applicable statute of limitations, tolling. The statute of limitation is two years. You get two years tolling when you're in prison, right? And if you're in prison, the statute is tolled for two years. If you are in pre-prison, before you're convicted, from the date you're arrested until the date you're sentenced, the statute is tolled in total. There's no time limitation. During that entire period. During that entire period. It starts to run again once you get a judgment. Well, in this particular case, he was arrested, and I think I have the timetable as an appendix here in my brief. He was arrested on April 3rd of 2008. At that point in time, the statute of 945.3 begins to run. He is convicted on October 4th, 2004. 945.3 then stops, and 352.1 begins. 352.1 goes for two years at maximum. So that takes us up to April 4th of 2006. At 2006, there is no statute. The statute begins to run for the first time, the two-year statute. At that point in time, and by the way, during the appeal, the statute doesn't run. So from the time of conviction, the statute begins to run immediately, October 4th, 2006. It ends. On December 13th, which is two and a half months later. I think Judge Elston disagreed with you on the question as to whether or not there was tolling during the period of the appeal. Am I wrong? I think the Court erred. I think the Court said these two statutes run concurrently. And I'm running out of time, but the two statutes do not run concurrently. The purpose of the statutes are completely different. One, 945.3, is a statute which I helped many, many years ago codify with the State Legislature so that defendants would not file civil suits against police officers and use discovery in the civil case as part of their defense in the criminal case.  And so to now take 352 and combine it with 943 is two different things. One's a government code statute. One is a probate code. I'm sorry, a code of civil procedure. So it's two separate things. I've got a separate question on section limitations, and that's not how the tolling worked, but rather when the period starts. With respect to the taking of his property out of the storage locker. Yes. Judge Ilston relies on, she says it starts, he should have known, when we're at the preliminary hearing, and there's some evidence that they were there. As I listened to the tape of the interview with Investigator Cook this morning, after he has done his sort of 20 minutes of monologue, and she comes back in, and she's trying to Mirandize him. And he's making it difficult for even a man to Mirandize because he keeps talking. One of the things he says is, I'm very well connected. I'm going to basically sue everybody in sight. Among other things, they took all my stuff out of the storage locker. That sounds to me as though he's on notice right there. I mean, out of his own mouth, he says, they took all my stuff. I don't remember that in the tape, but if the court says it's there, it's there. But let's assume, for all intents and purposes, assume it's there. But even if on April 10th of 2003 he had notice, he still has a three-year statute on 338. And with the tolling, if you put everything together from the appendix I've shown here, the statute still hasn't run.   we're going to sue everybody, but it's not a case of, you know, we're going to sue everyone. Why don't we hear from the other side, and then we'll give you a chance to respond. I would like to address the attorney's fees issue. It's kind of personal. Why don't you say that right now, then, if you want to talk about that. Well, as far as the Hendersons are concerned, I sent them the summons and complaints through the mail with a notice of acknowledgement under Rule 4, the way you're supposed to do, to save efficiency and keep the cost of litigation down. No response. I called them. When I called them, they threatened me with mail fraud, and they did report it in mail fraud because the post office called me and asked me what it was about. Then an attorney calls me who has ‑‑ I've never heard of and don't know who she is, and she threatens me with sanctions unless I dismiss the case, and I ask her to please return the notice of acknowledgement, and she says no, she's going to file a motion to dismiss, et cetera, or she's not going to do it. That's when I sent out a process server. And that leaves on October 6th, if my memory serves correctly. On October 13th, when she gets service of my motion for attorney's fees, after I've spent four or five hours on that motion, I get a letter back with a check a week later. Now she figures out I've done it right, so I get a check for $135, but the court says, and I quote, claims counsel should have taken numerous additional steps. Under the rule, I don't have to do anything. I didn't have to call either one of them, but I did. I did everything I thought was possible, and yet all I got was a rebuff and a threat of sanctions and a threat from the post of mail fraud. I'm not sure how to say this, but when an attorney gets a call from another attorney and says they're going to ask for sanctions against me unless I dismiss the case before anything is done, I get a little bit upset, and I just do what I do. I don't think it's proper. And to deny my attorney's fees, the court had no basis for it. It's not discretionary. It's mandatory. The statute, the rule doesn't say may. It says shall, and I would hope the court would look at it that way, because there's no reason I shouldn't get my client has to bear the cost of what they did. Okay. And now we'll have the other side. We'll give you a chance to respond. Good morning. If it pleases the court, my name is Allison Jackson, and I represent the defendants Betty Henderson and Kenneth Henderson. Are you in a split time? Yes, we're splitting time here. I don't want to take any longer than seven minutes. I'd like the rest of you to watch the clock. It counts down. Okay. Thank you. At least for the last 25, 26 years of the 1983 actions, the court should apply the forum state's law regarding the statute of limitations and questions as to tolling. California, with respect to personal injury, which is the statute of limitations to be applied, is two years for cases post-2003 and pre-2003 is one year. Section 945.3 of the California government code applies to police officers and precludes people from filing actions, individuals from filing actions against police officers. Tell me again, who are you representing? The Hendersons. And so why are we talking about the police officers? We are talking about statute 945.3 because the appellant reports that that tolls the statute as to my civilian clients. I see. Okay. And why are you talking about a 1983 action? Because that is they're being sued under section 1983. And your clients are acting under color of state law? No, they were individuals in their late 70s that had gotten a call. So why am I using 1983 to find my statute of limitations? Because that is how it is charged. That is what the complaint stated. And there's no other charge except a 1983 suit brought against your client? That is correct. I thought your client's big issue was the attorney's fees and the cost of service. No, they are in count 5, which is being appealed by Mr. Rawlins. They were charged with conspiracy to deprive him of his property. And so the coming in 1983 is conspiracy with the cops? Is that the idea? Yes. When they received their call in the middle of the night that their daughter had died, they got onto a plane, they fly from Texas to Humboldt County to identify her body in the morgue, and then asked to pick up some of her things. They could not go to a mobile home where she had been living, because it had been completely cleaned out. Everything was in storage. And so they took back with them, along to bury their daughter, a box of family photos, a cookie jar, a skull that was hand-planted, a cow skull that was hand-painted by their deceased daughter, a box of 150 cassette tapes, and a box of CDs. That is what we're here about. Could you address the attorney's fees with respect to the service process? That's the one thing that gives me a little... Certainly. Certainly. The appellant and I have just different understandings as to how things occurred. In late, early, I would say late August, early September, I found out that there was a suit against Christine Cook and alerted, called the Hendersons, because I knew that they were in their late 80s. I knew they were in frail health, and I was unsure as to whether or not they would even know what was going on. They sought to get an attorney. They could not. They called me back. Still, they're out of state. At what time I asked them to send me the paperwork. They did not know where the paperwork was. So at that point I contacted Mr. Hamlisch, said I would step in, I would represent him in the case and ask him to send me the paperwork. He hung up on me. I called him again. He again hung up on me. I called him a third time, which was several days after that. He indicated that he was not going to send the paperwork. You can't make findings of fact. You asked me what had occurred.    Court is asking you to find out the record. Yeah, well, this follows on from what Judge Kleinfeld said. How much of this is in the record in front of Judge Yeltsin? I mean, a lot of it – most of it is in the record. Did she make some findings? Yes, she did. I mean, what he says is he made the ordinary contact to see whether you would accept service of process.    And I'm here to tell you that I had no idea about what this was all about. And he hung up on you and wouldn't cooperate with you. That's correct. One of these accounts must be mistaken. Maybe both. Maybe both. Did the district judge make a finding of fact? Actually, I believe she did. She said that there – I believe that there was good cause I want to know what happened. What happened before – Did she make a finding of fact on what happened? No, she said that she – Whether he called to try to get your side to accept service and you refused or whether you called to try to get information and he refused. Did she make a finding on that? No, she did not. What she did was go through the record, go through the letters that were exchanged and indicating and look at the acknowledgment and receipt, which was not even in Henderson's name but in Christine Cook's name, and said that – Let's stipulate – Certainly. Let's stipulate that Rollin is a very bad person and that Rollin's lawyer is a very bad person for purposes of my question. Certainly. Both awful people who did awful things. All I care about right now is did this very bad person who's Rollin's lawyer ask you to accept service or process and you declined. Is there a finding of fact on that? I think you've said no, there is not. No, there is not. And for the record, I didn't decline. I asked for those papers. But there's no finding of fact that says that what you just told us is true. Is that correct? That is correct. Thank you. But it seems to be undisputed that someone sent counsel a check for $132, which would be $100 for the server and – well, $113.32 for the certified mailing. That check was sent? Yes, that was. It was upon my first notice that that was the amount. And that check's been cashed? Correct. So the only thing we're – the only thing at issue is the $3,750 in attorney's fees that plaintiff's lawyer thinks should be paid as part of this process. Correct. Got it. Okay. Thank you. Two, one, eight minutes. At this point, I will defer. Thank you. Good morning, Your Honors. Nancy Delaney representing the, what have been collectively referred to as the county defendants, actually in different positions. Christine Cook, the subject of most of the discussion because of the statement. Also, an officer both in the coroner's office. Counsel, I thought there was a recent Supreme Court decision that said that the technique that had become common in California of questioning a person in custody without Mirandizing them, getting them to admit whatever they could get them to admit, then Mirandizing them and asking the same questions was a Miranda violation. Is that correct? Yes, Your Honor. There is an issue about that. But, of course, that would not inform. I can't remember the name of it. ELSTAT or something like that? That would not inform in any way the Court's decision with respect to qualified immunity. Why wouldn't it? Because. You want to question a suspect in custody, you Mirandize. And here what we have are statements by the officer indicating that they're the introductory statements informing the individual why she is there. And they're virtually identical to other statements that. I don't really see that. We have a lot of law that says you don't have to put a question mark on the end of the interrogation. If a man comes home at 2 in the morning and his wife says to him it's a declaratory statement rather than a question, so you were working late until 2 in the morning at your office. Right. That's a question. That would be rhetorical probably. Yes, Your Honor. Here, though, what we have is a situation where, as Your Honors were discussing earlier, there are multiple aspects to this. First, the law is clear that Ms. Cook was entitled to say why she was there as part of the. So, I'm interested in what Officer Moles-Haney or something like that said about Joy being strangled. I can't remember the exact statement. Choking to death.   And then she looks at him and he tells the whole story, or one whole story. But, Your Honor, it's hard to see the difference between that and something to the effect of we're interested in you paying $60,000 or receiving $60,000 to provide some cocaine. The, again, the officer is allowed to use or take actions normally attendant to arrest and custody and explain that without that constituting an interrogation. That was the law, the Supreme Court authority, and then also in Estelle and Marino Flores, 89 and 94 cases in the Ninth Circuit. Even more instructive is U.S. v. Head, an Eighth Circuit case decided in 2005. So, after this event, circuits applying the law can be. I think you're right that you have cases going every which way in the various circuits. Let me ask you about something else. Statute of limitations. What is your rebuttal to the point made at oral argument by your adversary about the statute of limitations? That that's not the law, that there's no tacking, that these do not run independently. The tolling provisions. Why don't you lay out what you think is correct? I'm hoping we did it well in writing as well, because it's, as to. As to government code 945.3 that deals with when charges are pending. Help me understand it. It would be easier for me anyway. I don't know about my colleague. It would be easier for me if you gave it by date and said, this is tolled because or this is not tolled because. That tolled as to the second through fifth causes of action to everyone except, we agree, and the Henderson's are private citizens. They're not involved in that. Mr. Finnemore is a health care provider. He's not covered by it. It's indeed the purpose of those, of that particular government code provision to not have a circumstance where law enforcement officers are being sued and that civil proceeding is used to garner information for the criminal proceedings. That only tolled the statute of limitations between May 19, 2003, and October 4, 2004. The other time you concede is tolled for the law enforcement officers is 519.03 to 10404. Correct. The Code of Civil Procedure Provision 352.1 provides for up to two years of tolling when someone's in prison other than on a life sentence. What appellant has tried to do is to tack those together. And that's not how the tolling provisions work. As Judge Hylston properly concluded, indeed what you're looking at is when is an individual capable of bringing the suit because the individual is not barred by government code 945.3, nor under the disability of being in prison that provides or is considered a disability for which he gets the two years of tolling. When those are coincident Is there any hex tolling involved? No. Well, in terms of a conviction that would have been inconsistent with the civil suit, no. That's not the issue here. Nor was that raised as a tolling aspect. As a practical matter, the plaintiff would have gotten the benefit of something attendant to heck because the time that he was in prison before the reversal of the conviction was not counted in the expiration of the limitation period. Your Honors, may I say one more thing on the qualified immunity issue, if I've hopefully answered the statutory tolling aspect, and that is we have a situation here, as Your Honors indicated in the beginning, where this is a decision made by a prosecutor after listening to both statements, to use this statement, all of the statements are audio and video, and a court listens to these statements. A sitting Superior Court judge in the State of California concludes there was not a Miranda violation. If there's anything to suggest that the contours that qualified immunity is designed to address, and of course, Pearson v. Callahan answers why Judge Olson analyzed it the way she did, as opposed to the two-pronged approach that appellant suggests should have occurred. Again, this is a case where no one really has to decide one way or another to use the statute to decide this case, whether there was a Miranda violation. Let me short-circuit it just to speed things up. What you're saying is if the Superior Court judge can make a mistake and erroneously admit this un-Mirandaized statement because for some reason Miranda wasn't violated, an investigative officer should surely be forgiven for doing the same thing with intersecting and interrogation, under qualified immunity. That's the point. If I may just say. I think your answer should be yes. Yes, Your Honor. Okay. It's that and that. If a Superior Court judge thinks that's the law, why wouldn't an officer think that's the law? That's exactly the point. That's my point. I got it. Okay. Thank you. Thank you. Would you like one minute? Yes, Your Honor. I'm not quite sure where to begin. I'll begin with the attorney's fees issue. At the record on page 108 through 111 and 113 through 115 are two letters from Ms. Jackson to me, and they both thank me for my phone calls. We'll sort through that. Okay. In any case, I think the letters speak for themselves and I won't go further. As to the tolling statutes, 945, I'm sorry, 945.3 is a tolling statute while somebody is under charges and he is in jail. 9352.3 specifically says imprisoned. Now, in California, prison is run by the State of California. There are no prisons run by the county, the city or any other entity. When you're in prison, you have been convicted. You don't go to prison while you're a detainee or you're pending charges unless you're in violation of parole. So those two statutes are separate and distinct. And if you try to combine the two, you're saying I'm going to combine jail and prison. Whenever he's pre-conviction, there's tolling, no matter how long it takes. Once he's post-conviction, it's tolled for two years and that's it. Right. Is that right? That's correct. In this particular case, you had pre-conviction, 943.5, followed by 362.3, and then he was recharged. Right. But this puzzles me because as I read Judge Elston, she calculated it exactly the way you're saying we should be calculating it. I didn't read it that way. I read it that she – I read that she – I'll go back and read it again. Okay. But I understand the statute's the same way you do.  Thank you. As far as Henderson's concerned, that came up as why they're here in terms of their private citizens. Under the – in the – Well, the dismissal was not based on there's no 1983 claim, so I'm not sure that's relevant at this point. Right. The dismissal of them was not based – It was not based on there is no cause of action under 1983 that lies. The dismissal was based on statute of limitations. Isn't that right? I thought it was based on both, but I would stand corrected. And the reason I am mentioning it is because a private citizen can become a state actor. Of course. When they act in concert. Of course. And that's the argument from the conspiracy charge. I got it. Is the – is it all about the storage locker? Yes. So you can get fired with the police to loot a storage locker? Yes. And without going into a long story, what was in the storage locker? I'd like to find a place I can sell my old cassette tapes and CDs for $100,000. Yeah. Well, original Beatles cuttings are worth a fortune. Yeah. Okay. He had some. Got it. The last thing is qualified immunity, which the court raised. If a judge made a mistake, couldn't a police officer make a mistake? I – Some judges are really stupid, if that's what you want to say. I didn't want to say that. I heard that about 40 years ago from Judge Kaufman in Chicago in the Seventh Circuit. But in any case, in the Panther case. Yeah, yeah, I got it. Okay. But, yes, judges make mistakes. Okay. And the fact that a police officer is trained in exact – I mean, they carry cards with them. No, I think we got the point. That is to say, it's possible that the judge made such an egregious mistake that that doesn't necessarily mean that it was not an egregious mistake by Cook. Got it. Okay. Thank you, Your Honor. Thank both sides for your arguments. The case of Rolland v. Cook now submitted for decision. We've got one last case on the calendar. And that's Olivas-Mata v. Holder.
judges: Hug, Kleinfeld, Fletcher